**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| MAXELL, LTD.,<br><br>         *Plaintiff,*<br><br>v.<br><br>ZTE CORPORATION and<br>ZTE USA INC.,<br><br>         *Defendants.* | Case No. 5:16-cv-00179-RWS<br><br>**JURY TRIAL DEMANDED** |

## FINAL PRETRIAL ORDER

The Final Pretrial Conference was held on June 6, 2018, pursuant to the Court's May 29, 2018 Order (Docket No. 132) and Rule 16 of the Federal Rules of Civil Procedure. The following parties submitted this Amended Joint Pretrial Order: Plaintiff Maxell, Ltd. ("Plaintiff" or "Maxell") and Defendant ZTE (USA), Inc. ("Defendant" or "ZTE").

## A.  COUNSEL FOR THE PARTIES

### 1. Plaintiff:

Geoff P. Culbertson
Patton, Tidwell & Culbertson, LLP
2800 Texas Boulevard (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233
gpc@texarkanalaw.com

Jamie B. Beaber
Alan M. Grimaldi
Kfir B. Levy
James A. Fussell, III
Baldine B. Paul
Tiffany A. Miller

Justin Park
Saqib J. Siddiqui
Bryan C. Nese
William J. Barrow
Michael T. Lindinger
Alison T. Gelsleichter
Clark S. Bakewell
Mayer Brown LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
agrimaldi@mayerbrown.com
klevy@mayerbrown.com
jfussell@mayerbrown.com
bpaul@mayerbrown.com
tmiller@mayerbrown.com
jpark@mayerbrown.com
ssiddiqui@mayerbrown.com
bnese@mayerbrown.com
wbarrow@mayerbrown.com
mlindinger@mayerbrown.com
agelsleichter@mayerbrown.com
cbakewell@mayrbrown.com

Robert G. Pluta
Amanda S. Bonner
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
rpluta@mayerbrown.com
asbonner@mayerbrown.com

**2. Defendant:**

Steven A. Moore (232114)
steve.moore@pillsburylaw.com
Callie A. Bjurstrom (137816)
callie.bjurstrom@pillsburylaw.com
Nicole S. Cunningham (234390)
nicole.cunningham@pillsburylaw.com
Matthew R. Stephens (288223)
matthew.stephens@pillsburylaw.com
Sara O'Connell (238328)

sara.oconnell@pillsburylaw.com
Howard Wisnia (184626)
howard.wisnia@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
501 West Broadway, Suite 1100
San Diego, CA 92101-3575
619.234.5000
619.236.1995

Eric H. Findlay
State Bar No.00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
102 North College Avenue, Suite 900
Tyler, TX 75702
(903) 534-1100
(903) 534-1137 FAX
efindlay@findlaycraft.com
bcraft@findlaycraft.com

## B.    STATEMENT OF JURISDICTION

This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. § 101, *et seq*. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). ZTE is contesting venue pursuant to FED. R. CIV. P. 12(b)(3). ZTE also asserts that this action should be transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1406(a).

## C.    NATURE OF ACTION

### Maxell's Statement

This is a suit for patent infringement under 35 U.S.C. § 271. ZTE infringes, literally or under the doctrine of equivalents, one or more claims of U.S. Patent Nos. 6,748,317 ("the '317 Patent"), 8,339,493 ("the '493 Patent"), 8,736,729 ("the '729 Patent"), 6,408,193 ("the '193 Patent"), 6,329,794 ("the '794 Patent"), 6,816,491 ("the '491 Patent"), and 8,098,695 ("the '695

Patent") (collectively, the "Patents-in-Suit"). Further, ZTE's infringement is and has been willful. Maxell seeks an injunction and both pre- and post-verdict damages to compensate Maxell for ZTE's acts of infringement, but in no event less than a reasonable royalty for the infringement. Maxell also seeks enhanced damages pursuant to 35 U.S.C. § 284 and recovery of its attorneys' fees pursuant to 35 U.S.C. § 285, as well as its costs. Maxell denies ZTE's counterclaims of invalidity, unenforceability, and non-infringement of the Patents-in-Suit.

**ZTE's Statement**

Maxell has accused ZTE of directly infringing one or more claims of U.S. Patent Nos. 6,748,317 ("the '317 Patent"), 8,339,493 ("the '493 Patent"), 8,736,729 ("the '729 Patent"), 6,408,193 ("the '193 Patent"), 6,329,794 ("the '794 Patent"), 6,816,491 ("the '491 Patent"), and 8,098,695 ("the '695 Patent") (collectively, the "Patents-in-Suit"). ZTE contends that none of the asserted claims are infringed directly by ZTE. In addition, each of the asserted claims of the Patents-in-Suit are invalid as anticipated or made obvious by the prior art under 35 U.S.C. §§ 102 and 103. ZTE also contends that the '317 Patent is invalid and void for failure to comply with the requirements of 35 U.S.C. § 112. ZTE also contends that the '317 Patent and '794 Patent fail to claim patent-eligible subject matter under 35 U.S.C. § 101.

Maxell is not entitled to any damages. ZTE further alleges that its alleged infringement has not been willful. ZTE also contends that Maxell is not entitled to enhanced damages nor is this an exceptional case entitling Maxell to its attorneys' fees and costs. Maxell is also not entitled to an injunction. ZTE seeks its costs, expenses, and attorney's fees under 35 U.S.C. § 285 and any other relief that the Court deems appropriate.

## D.    CONTENTIONS OF THE PARTIES

The parties set forth below a summary of their contentions for trial. The parties do not necessarily agree with each other's summaries and contentions and reserve all objections.

**Maxell's Statement of Its Contentions**

By providing these contentions, Maxell does not waive any of its motions *in limine*, which, if granted, would resolve some or all of these issues. Furthermore, Maxell's contentions in this case are detailed, in part, in its pleadings, infringement contentions, discovery responses, the expert reports and depositions of Maxell's experts, and its motion briefing and responses to ZTE's pending and anticipated motions, which are all incorporated by reference herein.

1.      Maxell contends that the Patents-in-Suit are valid, enforceable, and infringed by ZTE.

2.      Maxell contends that ZTE infringes, literally and under the doctrine of equivalents, claim 1 of the '193 Patent by making, using, selling, offering for sell, and/or importing into the United States the following products:  Avid 828 / Midnight Pro LTE, Blade V8 Pro, Compel, Grand X 4, Imperial II, Lever LTE, Maven 2 (6349A), Prelude, Sonata 3, Warp 7, Warp Elite Z9518, Zinger, Axon / Axon A1, Axon 7 / Axon 7 Mini, Axon Max, Axon Pro, Fanfare, Fanfare 2, Anthem 4G N910, Blade Force, Director N850L, Engage LT N8000, Flash N9500, Force N9100, Fury N850, Grand S Pro N9835, Imperial N9101, Max XL, Nubia Z5 NX501, Prestige 2, Prestige N9132, Reef N810, Render N859, Speed N9130, Supreme N8910 / Vital N9810, Tempo X, Warp N860, Warp Sync N9515, Concord V768, Engage V8000 / Nova 4 V8000, Grand S V988, Groove X501, Score M X500M / Score X500, ZMAX 2 Z955L, ZMAX 2 Z958, ZMAX PRO, Atrium Z793C, Avid Plus Z828, Axon M, Blade Max 3, Blade Spark, Blade Vantage, Blade X, Blade X Max, Blade ZMAX, Concord II Z730, Fanfare 3, Grand X Max 2 Z988, Grand X Max Z787, Grand X3 Z959, Jasper LTE, Majesty Pro LTE, Majesty Z796C, Maven 3, Maven Z812 / Overture 2, Max Blue LTE, Max Duo LTE Z963VL-Z962BL, Merit Z990G / Z990, Obsidian Z820, Overture 3, Overture Z995, Paragon Z753G, Sonata 2

Z755, Quartz Z797C, Rapido LTE Z932L, Savvy Z750C, Sonata Z740G, Unico LTE Z930L, Whirl Z660c, Z667, Z998, Zephyr Z752C, ZFive 2 LTE, ZFive L LTE, ZMAX Champ LTE, ZMAX Grand LTE, Zmax Z790, Optik V55, and Trek 2 (6461A) ("the '193 Accused Products").

3.      Maxell contends that ZTE literally infringes claims 1-3 of the '317 Patent by making, using, selling, offering for sell, and/or importing into the United States the following products:  AT&T ZTE 331, Compel, Maven 2 (6349A), ZMAX 2 Z958, Maven Z812 / Overture 2, Merit Z990G / Z990, Z667, and Z998 ("the '317 Accused Products").

4.      Maxell contends that ZTE infringes, literally and under the doctrine of equivalents, claim 5 of the '493 Patent and that ZTE literally infringes claim 6 of the '493 Patent by making, using, selling, offering for sell, and/or importing into the United States the following products:  Avid 828 / Midnight Pro LTE, Blade V8 Pro, Grand X 4, Sonata 3, Warp 7, Warp Elite Z9518, Axon / Axon A1, Axon 7 / Axon 7 Mini, Axon Max, Axon Pro, Fanfare 2, X6, Axon M, Blade Max 3, Blade Spark, Blade Vantage, Blade X, Blade X Max, Blade ZMAX, Fanfare 3, Grand X Max 2 Z988, Jasper LTE, Majesty Pro LTE, Maven 3, Max Blue LTE, Max Duo LTE Z963VL-Z962BL, Overture 3, ZFive 2 LTE, ZFive L LTE, ZMAX Champ LTE, and ZMAX Grand LTE ("the '493 Accused Products").

5.      Maxell contends that ZTE infringes, literally and under the doctrine of equivalents, claim 1 of the '729 Patent and that ZTE literally infringes claim 2 of the '729 Patent by making, using, selling, offering for sell, and/or importing into the United States the following products:  Avid 828 / Midnight Pro LTE, Blade V8 Pro, Grand X 4, Sonata 3, Warp 7, Warp Elite Z9518, Axon / Axon A1, Axon 7 / Axon 7 Mini, Axon Max, Axon Pro, Fanfare 2, X6, Axon M, Blade Max 3, Blade Spark, Blade Vantage, Blade X, Blade X Max, Blade ZMAX, Fanfare 3, Grand X Max 2 Z988, Jasper LTE, Majesty Pro LTE, Maven 3, Max Blue LTE, Max

Duo LTE Z963VL-Z962BL, Overture 3, ZFive 2 LTE, ZFive L LTE, ZMAX Champ LTE, and ZMAX Grand LTE ("the '729 Accused Products").

6.      Maxell contends that ZTE infringes, literally and under the doctrine of equivalents, claim 1 of the '491 Patent and that ZTE literally infringes claim 8 of the '491 Patent by making, using, selling, offering for sell, and/or importing into the United States the following products:  Avid 828 / Midnight Pro LTE, Blade V8 Pro, Boost Max, Boost Max+, Compel, Grand X 4, Imperial II, Lever LTE, Maven 2 (6349A), Sonata 3, Warp 7, Warp Elite Z9518, Axon / Axon A1, Axon 7 / Axon 7 Mini, Axon Max, Axon Pro, Fanfare 2, Anthem 4G N910, Blade Force, Director N850L, Engage LT N8000, Flash N9500, Force N9100, Fury N850, Grand S Pro N9835, Imperial N9101, Max XL, Nubia Z5 NX501, Prestige 2, Prestige N9132, Source N9511, Supreme N8910 / Vital N9810, Tempo X, Warp Sync N9515, Z9, Z9 Max, Z9 Mini, Engage V8000 / Nova 4 V8000, Grand S V988, Groove X501, ZMAX PRO, Avid Plus Z828, Axon M, Blade Max 3, Blade Spark, Blade Vantage, Blade X, Blade X Max, Blade ZMAX, Citrine LTE Z716BL, Fanfare 3, Grand X Max 2 Z988, Grand X Max Z787, Grand X3 Z959, Jasper LTE, Majesty Pro LTE, Maven 3, Maven Z812 / Overture 2, Max Blue LTE, Max Duo LTE Z963VL-Z962BL, Merit Z990G / Z990, Obsidian Z820, Overture 3, Overture Z995, Paragon Z753G, Sonata 2 Z755, Rapido LTE Z932L, Solar Z795g, Sonata Z740G, Unico LTE Z930L, Zephyr Z752C, ZFive 2 LTE, ZFive L LTE, ZMAX Champ LTE, ZMAX Grand LTE, and Optik V55 ("the '491 Accused Products").

7.      Maxell contends that ZTE infringes, literally and under the doctrine of equivalents, claim 1 of the '695 Patent by making, using, selling, offering for sell, and/or importing into the United States the following products:  Avid 828 / Midnight Pro LTE, Blade V8 Pro, Boost Max, Boost Max+, Compel, Grand X 4, Imperial II, Lever LTE, Maven 2

(6349A), Sonata 3, Warp 7, Warp Elite Z9518, Axon / Axon A1, Axon 7 / Axon 7 Mini, Axon Max, Axon Pro, Fanfare 2, Anthem 4G N910, Blade Force, Director N850L, Engage LT N8000, Flash N9500, Force N9100, Fury N850, Grand S Pro N9835, Imperial N9101, Max XL, Nubia Z5 NX501, Prestige 2, Prestige N9132, Source N9511, Supreme N8910 / Vital N9810, Tempo X, Warp Sync N9515, Engage V8000 / Nova 4 V8000, Grand S V988, Groove X501, ZMAX PRO, Avid Plus Z828, Axon M, Blade Max 3, Blade Spark, Blade Vantage, Blade X, Blade X Max, Blade ZMAX, Citrine LTE Z716BL, Fanfare 3, Grand X Max 2 Z988, Grand X Max Z787, Grand X3 Z959, Jasper LTE, Majesty Pro LTE, Maven 3, Maven Z812 / Overture 2, Max Blue LTE, Max Duo LTE Z963VL-Z962BL, Merit Z990G / Z990, Obsidian Z820, Overture 3, Overture Z995, Paragon Z753G, Sonata 2 Z755, Rapido LTE Z932L, Solar Z795g, Sonata Z740G, Unico LTE Z930L, Zephyr Z752C, ZFive 2 LTE, ZFive L LTE, ZMAX Champ LTE, ZMAX Grand LTE, and Optik V55 ("the '695 Accused Products").

8.     Maxell contends that ZTE infringes, literally and under the doctrine of equivalents, claims 1 and 2 of the '794 Patent by making, using, selling, offering for sell, and/or importing into the United States the following products:  Axon / Axon A1, Axon 7 / Axon 7 Mini, Axon Pro, ZMAX 2 Z955L, ZMAX 2 Z958, ZMAX PRO, Axon M, Maven 3, Max Duo LTE Z963VL-Z962BL, and ZMAX Grand LTE ("the '794 Accused Products").

9.     Maxell contends that a reasonable royalty for the infringement would be $27,612,828 through trial and $43,062,532 through the expiration of the Patents-in-Suit, subject to minor modifications based on Q1 2018 sales data received June 12, 2018.

10.     Maxell contends that ZTE cannot prove by the appropriate burden any of its affirmative defenses.

11.     Maxell contends ZTE's alleged infringement is willful.

12.     Maxell contends it is entitled to prejudgment interest.

13.     Maxell contends it is entitled to enhanced damages.

14.     Maxell contends that this is an exceptional case warranting an award of attorneys' fees.

15.     Maxell contends that it, and all its predecessors in interest, have complied with 35 U.S.C. § 287.

16.     Maxell contends that it is entitled to an injunction against ZTE. In the alternative, Maxell contends that any denial of an injunction should be conditioned on payment of reasonable royalties for future infringement, including during any stay of an injunction pending appeal.

17.     Maxell denies ZTE's defenses and declaratory judgment claims that the patents-in-suit are invalid, unenforceable, and not infringed by ZTE.

18.     Maxell denies that ZTE is entitled to its costs, a declaration that this case is exceptional, or its attorneys' fees.

19.     Maxell contends that venue is proper in the United States District Court for the Eastern District of Texas, Texarkana Division, in this case.

**ZTE's Statement of Its Contentions**

1.     ZTE contends that it has not directly infringed any asserted claim of the Patents-in-Suit.

2.     ZTE further contends that each of the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

3.     ZTE also contends that '317 Patent and '794 Patent fail to claim patent-eligible subject matter under 35 U.S.C. § 101.

4.     U.S. Patent No. 6,266,614 to Alumbaugh is prior art to the '317 Patent under at least 35 U.S.C. §§102(a) and (e). ZTE asserts the Alumbaugh Reference against the '317 Patent.

5.     U.S. Patent No. 5,267,262 to Wheatley is prior art to the '193 Patent under at least 35 U.S.C. §§102(a) and (b).  ZTE asserts the Wheatley Reference against the '193 Patent.

6.     U.S. Patent No. 5,548,616 to Mucke is prior art to the '193 Patent under at least 35 U.S.C. §§102(a) and (b).  ZTE asserts the Mucke Reference against the '193 Patent.

7.     U.S. Patent No. 5,452,473 to Weiland is prior art to the '193 Patent under at least 35 U.S.C. §§102(a) and (b).  ZTE asserts the Weiland Reference against the '193 Patent.

8.     TIA/IS-95-A + TSB74, published Feb. 1996 ("IS-95") is prior art to the '193 Patent under at least 35 U.S.C. §§102(a) and (b).  ZTE asserts the IS-95 Reference against the '193 Patent.

9.     U.S. Patent No. 5,710,981 to Kim is prior art to the '193 Patent under at least 35 U.S.C. §§102(a) and (b).  ZTE asserts the Kim Reference against the '193 Patent.

10.     U.S. Patent No. 5,828,406 to Parulski 406 is prior art to the '493 and '729 Patents under at least 35 U.S.C. §102(b).  ZTE asserts the Paulski 406 Reference against the '493 and '729 Patents.

11.     U.S. Patent No. 5,493,335 to Parulski 335 is prior art to the '493 and '729 Patents under at least 35 U.S.C. §102(b).  ZTE asserts the Paulski 335 Reference against the '493 and '729 Patents.

12.     U.S. Patent No. 5,440,343 to Parulski 343 is prior art to the '493 and '729 Patents under at least 35 U.S.C. §102(b).  ZTE asserts the Paulski 343 Reference against the '493 and '729 Patents.

13. U.S. Patent No. 6,512,541 to Dunton is prior art to the '493 and '729 Patents under at least 35 U.S.C. §102(e). ZTE asserts the Dunton Reference against the '493 and '729 Patents.

14. U.S. Patent No. 5,497,192 to Ishizuka is prior art to the '493 and '729 Patents under at least 35 U.S.C. §102(b). ZTE asserts the Ishizuka Reference against the '493 and '729 Patents.

15. U.S. Patent No. 6,345,180 to Reichelt is prior art to the '794 Patent under at least 35 U.S.C. §§102(a) and (b). ZTE asserts the Reichelt Reference against the '794 Patent.

16. U.S. Patent 6,363,266 to Nonogaki is prior art to the '794 Patent under at least 35 U.S.C. §§102(a) and (b). ZTE asserts the Nonogaki Reference against the '794 Patent.

17. U.S. Patent No. 6,337,715 to Inagaki is prior art to the '695 and '491 Patents under at least 35 U.S.C. §102(e). ZTE asserts the Inagaki Reference against the '695 and '491 Patents.

18. Bergher et al., *Dolby AC-3TM and MPEG-2 Audio Decoder IC with 6-Channels Output*, published in IEEE Transactions on Consumer Electronics, Volume 43, Issue 3, in August of 1997 (manuscript received June 13, 1997) is prior art to the '695 and '491 Patents under at least 35 U.S.C. §§ 102(a) and (b). ZTE asserts the Bergher Reference against the '695 and '491 Patents.

19. U.S. Patent No. 6,272,153 to Huang is prior art to the '695 and '491 Patents under at least 35 U.S.C. §102(e). ZTE asserts the Huang Reference against the '695 and '491 Patents.

20. Ko et al., *A VLSI Implementation of Dual AC-3 and MPEG-2 Audio Decoder*, published in IEEE Transactions on Consumer Electronics, Volume 44, Number 3, in August of 1998 (manuscript received June 17, 1998) is prior art to the '695 and '491 Patents under at least 35 U.S.C. §102(a). ZTE asserts the Ko Reference against the '695 and '491 Patents.

21.     U.S. Patent No. 6,031,657 to Ozkan is prior art to the '695 and '491 Patents under at least 35 U.S.C. §102(e). ZTE asserts the Ozkan Reference against the '695 and '491 Patents.

22.     ZTE denies that Maxell has been damaged by ZTE's alleged infringement and denies that Maxell is entitled to any damages.

23.     ZTE further contends that Maxell's claims for damages are barred in whole or in part for failure to comply with 35 U.S.C. § 287. ZTE denies that Maxell is entitled to any damages award, under any theory, including a reasonable royalty theory.

24.     ZTE seeks its attorney's fees and costs pursuant to 35 U.S.C. Section 285.

25.     ZTE's alleged infringement of the Patents-in-Suit has not been willful.

26.     ZTE also contends that Maxell is not entitled to enhanced damages nor is this an exceptional case entitling Maxell to its attorneys' fees and costs.

27.     ZTE is entitled to its costs, expenses, and attorney's fees under 35 U.S.C. § 285 and any other relief that the Court deems appropriate.

28.     ZTE denies that Maxell is entitled to an injunction, or any other relief whatsoever.

## E.     STIPULATIONS AND UNCONTESTED FACTS

### Maxell's Statement of Uncontested Facts

1.     Maxell filed its Original Complaint in this action on November 18, 2016.

2.     Maxell is a Japanese corporation with a registered place of business at 1 Koizumi, Oyamazaki, Oyamazaki-cho, Otokuni-gun, Kyoto, Japan.

3.     Maxell is a wholly-owned subsidiary of Maxell Holdings, Ltd.

4.     ZTE is a Texas company with a principal place of business located at 2425 N. Central Expy, Ste 323, Richardson, Texas 75080.

5.     ZTE is a wholly-owned subsidiary of ZTE Corporation.

6.      The '317 Patent was issued by the United States Patent & Trademark Office ("PTO") on June 8, 2004 and is entitled *Portable Terminal with the Function of Walking Navigation.*

7.      The inventions disclosed in the '317 Patent are entitled to the effective filing date and have a priority date of July 12, 1999.

8.      Maxell asserts infringement of claims 1-3, 6-7, 15, and 17 of the '317 Patent against ZTE.

9.      The '493 Patent was issued by the PTO on December 25, 2012 and is entitled *Electric Camera.*

10.     The inventions disclosed in the '493 Patent are entitled to the effective filing date and have a priority date of January 11, 2000.

11.     Maxell asserts infringement of claims 5-6 of the '493 Patent against ZTE.

12.     The '729 Patent was issued by the PTO on May 27, 2014 and is entitled *Electric Camera.*

13.     The inventions disclosed in the '729 Patent are entitled to the effective filing date and have a priority date of January 11, 2000.

14.     Maxell asserts infringement of claims 1-2 of the '729 Patent against ZTE.

15.     The '193 Patent was issued by the PTO on June 18, 2002 and is entitled *Cellular Telephone.*

16.     The inventions disclosed in the '193 Patent are entitled to the effective filing date and have a priority date of November 10, 1998.

17.     Maxell asserts infringement of claims 1, 6, and 7 of the '193 Patent against ZTE.

18.     The '794 Patent was issued by the PTO on December 11, 2011 and is entitled

*Information Processing Device and Method for Controlling Power Consumption Thereof.*

19.     The inventions disclosed in the '794 Patent are entitled to the effective filing date and have a priority date of May 22, 2000.

20.     Maxell asserts infringement of claims 1, 2, and 9 of the '794 Patent against ZTE.

21.     The '491 Patent was issued by the PTO on November 9, 2004 and is entitled *Multiplexed Audio Data Decoding Apparatus and Receiver Apparatus.*

22.     The inventions disclosed in the '491 Patent are entitled to the effective filing date and have a priority date of November 4, 1998.

23.     Maxell asserts infringement of claims 1 and 8 of the '491 Patent against ZTE.

24.     The '695 Patent was issued by the PTO on January 17, 2012 and is entitled *Multiplexed Audio Data Decoding Apparatus and Receiver Apparatus.*

25.     The inventions disclosed in the '695 Patent are entitled to the effective filing date and have a priority date of November 4, 1998.

26.     Maxell asserts infringement of claim 1 of the '695 Patent against ZTE.

27.     Maxell is the owner by assignment of the Patents-in-Suit and possesses all rights, title, and interest, including rights of recovery under the Patents-in-Suit, including the exclusive right to recover for past infringement.

28.     Jurisdiction is proper in this Court.

**Additional Trial Procedure Stipulations**

1.     The parties have agreed that each side will make the individuals who submitted expert reports in this case available to testify at trial. Neither side needs to designate the deposition testimony of the other side's experts provided that if despite this agreement any of these experts is unavailable for trial, the party submitting a report for that expert agrees that the

other party may submit a late designation of that expert's testimony.

2.      Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections. Any exhibit, once admitted, may be used equally by each party. The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit should the opposing party attempt to offer it into evidence.

3.      The parties agree that any date listed on the exhibit list is not evidence of nor an admission of the date of the document, and that failing to list a date is neither evidence of nor an admission of whether the document is dated. The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document.

4.      Legible photocopies of the Patents-in-Suit and their USPTO file history may be offered as evidence in lieu of certified copies thereof.

5.      Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof, subject to all foundational requirements and other objections that might be made to the admissibility of originals and subject to the right of the party against whom it is offered to inspect an original upon reasonable request in advance of any proposed use of the photocopy.

6.      The parties agree that the demonstrative exhibits the parties intend to use at trial do not need to be included on their respective lists of trial exhibits attached as Exhibits E and F to this Order.

7.      For purposes of this case, the parties agree that certain products may be treated as representative of other products and that proof of infringement or non-infringement of such

representative products shall be treated as proof as to the others. Specifically, for the purposes of infringement or non-infringement, the parties may treat the following products as representative of all of the accused products for a particular Patent-in-Suit and proof of infringement or non-infringement about the following products shall be treated as proof regarding all of the accused products for a particular Patent-in-Suit:

      a.    <u>'193 Patent</u> – ZMax 2 is representative of the '193 Accused Products.

      b.    <u>'794 Patent</u> – ZMax 2 is representative of the '794 Accused Products.

      c.    <u>'317 Patent</u> – ZMax 2 (AT&T) is representative of the '317 Accused Products.

      d.    <u>'491 and '695 Patents</u> – ZMax 2 is representative of the '491 Accused Products and the '695 Accused Products, except for the Axon 7, which is representative of itself..

      e.    <u>'729 and '493 Patents</u> – Max Duo LTE is representative of the '729 Accused Products and the '493 Accused Products, except for the Axon 7, which is representative of itself.

8.    For purposes of this case, the parties agree that, with respect to the accused functionalities of audio processing relating to the '491 and '695 patents, Qualcomm chips MSM89xx (*e.g.*, MSM8996 and MSM8916) work in the same way.

9.    With respect to the '193, '794, '491 and '695 patents, ZTE confirms that neither ZTE nor its experts will rely upon opinions or positions based on differences between the two versions of the ZMax 2. We further confirm our agreement that the Zmax 2 is the representative product for these patents regardless of model number.

10.    For purposes of Federal Rule of Evidence 901, the parties agree that all

documents produced by Maxell and appearing on their face to have originated from, or have been kept in the ordinary course of business by, Maxell, Hitachi Maxell Ltd., Hitachi Consumer Electronics Co., Ltd., or Hitachi Ltd. are authentic.

11.    For purposes of Federal Rule of Evidence 901, the parties agree that all documents produced by ZTE and appearing on their face to have originated from, or have been kept in the ordinary course of business by, ZTE (USA), Inc. and ZTE Corporation are authentic.

12.    The parties agree that written answers to interrogatories and requests for admission or stipulations agreed to in this case shall be treated as having been given under oath, whether or not the answers were signed or verified by the party making them.

**F.    CONTESTED ISSUES OF FACT AND LAW**

The parties identify the following issues of fact and law that remain to be litigated. To the extent any issue of law discussed below is deemed to be an issue of fact, it is designated as such, and visa versa. The parties do not waive any of their pending or anticipated motions and incorporates by reference the contested issues raised in their pending motions. The parties reserve the right to identify additional factual or legal issues that may arise, including issues raised in any motions *in limine.*

### Maxell's Statement of Contested Issues of Fact and Law

1.    Whether ZTE has infringed the asserted claims of the Patents-in-Suit.

2.    Whether Maxell is entitled to damages to compensate for ZTE's infringement of the Patents-in-Suit, and (if so) the amount of such damages.

3.    Whether ZTE's infringement was willful, entitling Maxell to enhanced damages, and (if so) the amount of such damages.

4.    Whether Maxell is entitled to costs, and (if so) the amount of such costs.

5.       Whether Maxell is entitled to pre-judgment and post-judgment interest, and (if so) the dollar amount of pre-judgment and post-judgment interest.

6.       Whether Maxell is entitled to an injunction against ZTE pursuant to 35 U.S.C. § 283, requiring ZTE to refrain from directly infringing, contributing to, or inducing the infringement of the Patents-in-Suit in the United States.

7.       Whether any denial of an injunction should be conditioned on payment of reasonable royalties for future infringement, and if so, the royalty amount set for future infringement and a means or mechanism to account for future royalty payments, including during any stay of an injunction pending appeal.

8.       Whether or not ZTE has been objectively reckless in its infringement of the Patents-in-Suit.

**ZTE's Statement of Contested Issues of Fact and Law**

1.       Whether Maxell has shown by a preponderance of the evidence that ZTE has directly infringed one or more of the asserted claims of the '317 Patent.

2.       Whether Maxell has shown by a preponderance of the evidence that ZTE has directly infringed one or more of the asserted claims of the '493 Patent.

3.       Whether Maxell has shown by a preponderance of the evidence that ZTE has directly infringed one or more of the asserted claims of the '729 Patent.

4.       Whether Maxell has shown by a preponderance of the evidence that ZTE has directly infringed one or more of the asserted claims of the '193 Patent.

5.       Whether Maxell has shown by a preponderance of the evidence that ZTE has directly infringed one or more of the asserted claims of the '794 Patent.

6.       Whether Maxell has shown by a preponderance of the evidence that ZTE has

directly infringed one or more of the asserted claims of the '491 Patent.

7.      Whether Maxell has shown by a preponderance of the evidence that ZTE has directly infringed one or more of the asserted claims of the '695 Patent.

8.      Whether ZTE has shown by clear and convincing evidence that one or more of the asserted claims of the '317 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 based on the prior art.

9.      Whether ZTE has shown by clear and convincing evidence that one or more of the asserted claims of the '493 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 based on the prior art.

10.      Whether ZTE has shown by clear and convincing evidence that one or more of the asserted claims of the '729 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 based on the prior art.

11.      Whether ZTE has shown by clear and convincing evidence that one or more of the asserted claims of the '193 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 based on the prior art.

12.      Whether ZTE has shown by clear and convincing evidence that one or more of the asserted claims of the '794 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 based on the prior art.

13.      Whether ZTE has shown by clear and convincing evidence that one or more of the asserted claims of the '491 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 based on the prior art.

14.      Whether ZTE has shown by clear and convincing evidence that one or more of the asserted claims of the '695 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 based on

the prior art.

15.     Whether ZTE has shown by clear and convincing evidence that one or more of the asserted claims of the '317 Patent is invalid under 35 U.S.C. § 112 for not meeting the enablement requirement and/or failing to disclose a proper written description.

16.     Whether the '794 Patent is directed to an abstract idea and whether it fails to claim an inventive concept because the elements of the claims, both individually and as an ordered combination, recite only conventional, well-known limitations.

17.     Whether the '317 Patent is directed to an abstract idea and whether it fails to claim an inventive concept because the elements of the claims, both individually and as an ordered combination, recite only conventional, well-known limitations.

18.     Whether Maxell is entitled to a reasonable royalty under U.S.C. § 284 for infringement of the '317 Patent, and if proven, the total amount of such royalty.

19.     Whether Maxell is entitled to a reasonable royalty under U.S.C. § 284 for infringement of the '493 Patent, and if proven, the total amount of such royalty.

20.     Whether Maxell is entitled to a reasonable royalty under U.S.C. § 284 for infringement of the '729 Patent, and if proven, the total amount of such royalty.

21.     Whether Maxell is entitled to a reasonable royalty under U.S.C. § 284 for infringement of the '193 Patent, and if proven, the total amount of such royalty.

22.     Whether Maxell is entitled to a reasonable royalty under U.S.C. § 284 for infringement of the '794 Patent, and if proven, the total amount of such royalty.

23.     Whether Maxell is entitled to a reasonable royalty under U.S.C. § 284 for infringement of the '491 Patent, and if proven, the total amount of such royalty.

24.     Whether Maxell is entitled to a reasonable royalty under U.S.C. § 284 for

infringement of the '695 Patent, and if proven, the total amount of such royalty.

25.     Whether Maxell failed to mark the patented products in compliance with 35 U.S.C. § 287.

26.     Whether Maxell's predecessors-in-interest failed to mark the patented products in compliance with 35 U.S.C. § 287.

27.     Whether Maxell and/or its predecessors-in-interest failed to require their licensees to mark the patented products in compliance with 35 U.S.C. § 287.

28.     Whether this case is an exceptional case, requiring Maxell to pay for ZTE's reasonable attorney's fees under 35 U.S.C. § 285.

29.     Whether Maxell has shown by a preponderance of the evidence that ZTE's infringement of the Patents-in-Suit has been willful.

## G.     LIST OF WITNESSES

1.     Maxell's Witness List is appended hereto as Exhibit A.

2.     ZTE's Witness List is appended hereto as Exhibit B.

3.     Maxell's list of deposition designations and ZTE's counter-designations are appended hereto as Exhibit C.

4.     ZTE's list of deposition designations and Maxell's counter-designations are appended hereto as Exhibit D.

## H.     LIST OF EXHIBITS

1.     Maxell's Exhibit List is appended hereto as Exhibit E.

2.     ZTE's Exhibit List is appended hereto as Exhibit F.

## I.     LIST OF ANY PENDING MOTIONS

**Maxell's Pending Motions**

| Dkt. No. | Date | Title |
|---|---|---|
| 173 | June 6, 2018 | Maxell's Motion Requesting Judicial Notice |
| 189 | June 14, 2018 | Maxell's Motion Requesting Judicial Notice |

**ZTE's Pending Motions**

| Dkt. No. | Date | Title |
|---|---|---|
| None. | | |

*Carried motions *in limine* are not included as pending motions.

## J.      PROBABLE LENGTH OF TRIAL

The probable length of trial is 10 days. The Court has granted the parties 23 hours per side for direct, cross, and rebuttal examination, subject to reduction as the parties narrow their contentions. The Court initially granted the parties 45 minutes per side for *voir dire*, but has indicated it will dispense with such time limits should issues arise relating to ZTE's emergency motion for a continuance of trial. The Court granted the parties 45 minutes per side for opening statements and 60 minutes per side for closing arguments. Docket No. 175.

## K.      MANAGEMENT CONFERENCE LIMITATIONS

None.

## L.      TRIAL MANAGEMENT PROCEDURES

---

[1] The Court's Order on the parties' Motions *in Limine* (Docket No. 176) indicated that ZTE's Motion No. 7 is "carried." However, the Court denied this Motion at the pretrial conference. *See, e.g.,* Minutes for Pre-Trial Conference, Document No. 174 at 12:57 pm; *see also* Transcript of Pre-Trial Conference at 111:22.

1.      Each party shall be permitted at the start of its case-in-chief to make an omnibus motion for submission into evidence of exhibits on its lists attached hereto (*i.e.*, Exhibit E for Maxell and Exhibit F for ZTE) and not subject to an evidentiary objection recorded thereon.

2.      The parties' exhibit lists include exhibits that may not necessarily be introduced into evidence. Each party reserves the right to add additional exhibits to its exhibit list, for good cause shown, by agreement of the parties, or as ordered by the Court. A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

3.      Subject to other provisions of this Order, no party may offer as evidence an exhibit not present on either party's exhibit list absent court order or agreement of the parties, except for purposes of impeachment or rehabilitation, if otherwise competent for such purposes.

4.      The parties shall identify and exchange demonstrative exhibits that will be used each trial day on the evening before that trial day at 7:00 p.m. Central Time. The parties shall exchange their objections to demonstrative exhibits by 9:00 p.m. Central Time on the evening before that trial day, and the parties shall promptly meet and confer on any such objections. If the parties cannot resolve their objections during the meet and confer, they will submit the issue to the Court before trial starts each day. Demonstratives will not be used by an opposing party prior to being used by the disclosing party.

5.      The party seeking to use a demonstrative exhibit shall provide a color (if the original exhibit is in color) representation of the demonstrative in PDF format to the other side. For videos or animations, the party seeking to use the demonstrative exhibit shall provide it to the other side in digital interactive format, including, as applicable, flash format, PPT format, MPG, or other video format.

6.      The parties agree that there is no exchange of demonstratives to be used for cross or redirect of witnesses. If a party provides a binder of exhibits to a witness prior to examination, the party will provide one copy to the other party.

7.      The parties will make available for inspection all non-documentary demonstratives or live product demonstrations, such as physical exhibits, physical prior art, or physical products, that the parties plan to use at trial for use during direct examination—but not for cross-examination—by 7:00 p.m. Central Time two nights before their intended use. In other words, if a non-documentary demonstrative will be used on a Wednesday, it must be exchanged or made available by 7:00 p.m. Central Time on the previous Monday. The parties shall exchange objections to these non-documentary demonstratives or live product demonstrations by 12:00 p.m. Central Time the day before their intended use. Non-documentary demonstratives or live product demonstrations will not be used by the opposing party prior to being used by the disclosing party.

8.      The parties agree that notice of a party's intended use of enlargements of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, etc. of such exhibits and/or deposition testimony need not be given (and need not be exchanged as a demonstrative exhibit), as long as the party has identified its intent to use the trial exhibit and/or deposition testimony according to the provisions of this Order, and such ballooning, excerption, highlighting, etc., accurately reflects the content of the exhibit. The parties further agree that the above notice provisions concerning demonstrative exhibits do not apply to demonstrative exhibits created in the courtroom during live testimony or that were previously shown to the jury, or that are ballooning, excerption, highlighting, etc. of witness testimony, attorney statements, or attorney argument generated during the trial before the jury.

9.      The parties request that during the pendency of the trial, counsel be permitted to move, and the Court admit if appropriate, evidence following use of the evidence, to the extent not admitted at the time of use. To clarify, this provision shall apply only to trial exhibits, properly admissible under the Federal Rules of Evidence.

10.     Upon the end of all parties' presentation of evidence, the parties will make available to the jury copies of all exhibits in evidence.

11.     With respect to witnesses who may be called to testify by deposition, the parties have designated specific page and line numbers of deposition testimony that they may read or play back during the respective parties' case-in-chief. New materials may not be added without good cause or the other party's agreement. All irrelevant and redundant material such as objections and colloquy between counsel will be eliminated when the deposition is read or viewed at trial to the extent feasible.

12.     Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

13.     The parties may offer some or all of the designated deposition testimony at trial. A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented upon at trial.

14.     Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

15.     In order to reduce the number of duplicative exhibits, where a deposition excerpt refers to a document by exhibit number and that identical document was also marked as a different exhibit number, a party may substitute one exhibit for another.

16.     Each party shall identify the witnesses it intends to call to testify, whether it intends to do so in person or by deposition, and the order in which they are to be called on each trial day at 7:00 p.m. Central Time two days before the day of trial during which the witnesses are expected to testify.

17.     The party intending to offer a witness by deposition shall provide the other party with a list of final deposition designations (from the previously designated testimony) it intends to introduce by 7:00 P.M. Central Time two days before the deposition testimony is expected to be read or played in Court.  The calling party shall identify the specific pages and lines of transcript from the witness's deposition that it proposes to read or play during trial. The other party shall identify for each such witness its objections to the identified testimony and counter-designations as set forth in this Pre-Trial Order and any objections to the identified trial exhibits by 7:00 p.m. one day before the deposition testimony is expected to be read or played in court. The parties shall promptly meet and confer that same day. Once the parties have met and conferred, they will submit any remaining disputed designations for the Court's consideration by 8:00 A.M. Central Time the following day (the day such deposition testimony is expected to be read or played in Court), including highlighted copies of the disputed materials and an itemized list of the remaining objections.

18.     If a party designates deposition testimony, and the other party counter-designates, then the designations and counter-designations will be read or played together and in chronological order. Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations and counter-designations.

19.     Any documents, deposition transcripts, or portions thereof, or other items, not specifically identified herein or offered into evidence, may still be used at trial for purposes of cross-examination, impeachment, or rehabilitation, if otherwise competent for such purposes, and may be admitted into evidence consistent with the requirements of the Federal Rules of Evidence.

20.     To the extent any of the foregoing conflicts with the Court's Order on Trial Procedures (Docket No. 175), the Court's Order on Trial Procedures controls.

## M.     AGREED MOTIONS *IN LIMINE*

Plaintiff Maxell Ltd. and Defendant ZTE (USA) Inc. jointly request the Court order the following agreed motions *in limine*:

1.     Preclude References to Discovery Disputes, Suggestions of Discovery Deficiencies, or Litigation Misconduct

2.     Preclude References, Suggestions, or Argument Disparaging Chinese, Japanese or Asian Companies, People, or Products Due to Nationality or Ethnicity, and Preclude Evidence or Argument Regarding Choice to Testify in Native Language

3.     Preclude Evidence or Argument Regarding ZTE's Lack of Opinion of Counsel

4.     Preclude Evidence or Argument Relating to Any Party's Motion in Limine, Daubert Motions, and the Court's Ruling on Such Motions, or the Fact that Any Party Has Attempted to Exclude Evidence on a Particular Matter

5.     Preclude Evidence or Argument Regarding Dropped Claims of Infringement and Invalidity

## N.     CERTIFICATIONS

The undersigned counsel for each of the parties in this action does hereby certify and

acknowledge the following:

(1)     Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2)     Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(3)     Each exhibit in the List of Exhibits herein:

      (a)     is in existence;

      (b)     is numbered; and

      (c)     has been disclosed and shown to opposing counsel.

Approved as to form and substance:

Attorneys for Plaintiff(s):     Jamie B. Beaber _____

Attorneys for Defendant(s):     Callie Bjurstrom _____


**So ORDERED and SIGNED this 18th day of June, 2018.**



_Robert W Schroeder III_
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE